IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| ANTHONY JAMES EDWARD ONNEN,<br><br>                 Plaintiff,<br><br>vs.<br><br>STATE OF IOWA, RICHARD DIEPHUIS, individually, and TRENT L. MCFARLAND, individually.<br><br>                 Defendants. | CIVIL CASE NO. _____<br><br><br>COMPLAINT AND JURY DEMAND |

COMES NOW Plaintiff, Anthony James Edward Onnen, by his attorney,

Robert Rehkemper, and for his Complaint and Jury Demand, state the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this Complaint under the Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

2. The Court has supplemental jurisdiction of the Iowa statutory and common law claims, pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1402(b) because the acts at issue in this lawsuit occurred within the District.

## PARTIES

4. The State of Iowa is a sovereign governmental entity subject to such rights as may at any time exist in the United States in relation to public lands, or

to any establishment of the national government.

5. The State of Iowa has waived its sovereign immunity and has consented to being sued for the acts and omissions of its employees, acting within the scope of their employment, pursuant to the Iowa Code Chapter 669.

6. Plaintiff Anthony Onnen ("Onnen") is a citizen of the United States and is a resident of Des Moines, Polk County, Iowa.

7. Defendant, Richard Diephuis ("Diephuis"), is a citizen of the United States and is upon information and belief, a resident of the state of Iowa.

8. Defendant, Trent L. McFarland ("McFarland"), is a citizen of the United States and is upon information and belief, a resident of the state of Iowa.

9. Diephuis was at all times relevant hereto, a certified peace officer in the state of Iowa, employed by the Iowa State Patrol, Iowa Department of Public Safety, which has its principal place of business located in Des Moines, Polk County, Iowa.

10. McFarland was at all times relevant hereto, a certified peace officer in the state of Iowa, employed by the Iowa State Patrol, Iowa Department of Public Safety, which has its principal place of business located in Des Moines, Polk County, Iowa.

11. The Iowa Department of Public Safety, by and through the Iowa State Patrol, is the department and/or agency of the State of Iowa, whose legislatively prescribed duties include, preventing crime, detecting, and

apprehending criminals and enforcing specially enumerated laws in the state of Iowa.

12. Diephuis and McFarland, as certified peace officers employed by the Iowa Department of Public Safety, had the legal obligation to act in conformity with the United States and Iowa Constitutions and other applicable federal and state laws.

13. At all times material hereto, Diephuis was acting within the scope and course of his employment as a peace officer with the Iowa State Patrol, Department of Public Safety.

14. At all times material hereto, McFarland was acting within the scope and course of his employment as a peace officer with the Iowa State Patrol, Department of Public Safety.

15. This cause of action arose in Mahaska County, Iowa, Southern District of Iowa.

16. The undersigned hereby certifies that this action meets the applicable jurisdictional demands for the amount in controversy.

17. Plaintiffs cause of action against all defendants concerns violations of his constitutional rights and personal liberties and are brought, to the extent applicable pursuant to 42 U.S.C. § 1981, 42 U.S.C. §1983, the common law and/or Chapter 669 of the Iowa Code ("State Tort Claims Act").

18. As it relates to the pendent State claims, Plaintiff filed a State Appeal Board Claim Forms and Affidavit in Claim Number T230604 which the State Appeal Board confirmed receipt of on May 25, 2023

19. The Iowa Attorney General on behalf of the Iowa State Appeals Board denied Plaintiff's claims on November 6, 2023.

20. Plaintiff has exhausted all administrative remedies under the Iowa Tort Claims Act as required by Iowa Code section 669.5.

## FACTUAL ALLEGATIONS

21. On October 17, 2022, at approximately 5:25 p.m., Onnen was operating his Dodge Ram pickup truck, Northbound on Highway 63, in Mahaska County, Iowa.

22. At that same time and location, near the intersection of Highway 63 and 293rd Street, Diephuis, executed a traffic stop of Onnen's vehicle for excessive tint.

23. Onnen is African American.

24. Diephuis and McFarland are Caucasian.

25. Upon observing the overhead lights of the squad vehicle being operated by Diephuis, Onnen pulled his vehicle over in a timely and appropriate manner.

26. Onnen was polite and cooperative with Diephuis and provided his driver's license, vehicle registration and proof of insurance as requested.

27. Diephuis observed a firearms magazine in Onnen's vehicle and asked Onnen if he had the gun that goes with the magazine.

28. Onnen confirmed that he was in possession of handguns which were properly stored for transportation in the rear of his truck.

29. Onnen is a competition shooter who travels around the United States partaking in lawful firearm sharp shooting competitions.

30. Onnen also volunteered that he had a valid permit to carry a firearm, issued in the state of Iowa.

31. Diephuis permitted Onnen to remain in the driver's seat of his vehicle while he took the information back to his squad car.

32. Back at his squad car, Diephuis ran Onnen's information through dispatch and within five minutes after the stop, received a report that Onnen had a valid driver's license and had no outstanding wants or warrants.

33. Diephuis did not begin processing a citation or written warning.

34. Instead, at approximately 5:30 p.m., Diephuis requested McFarland come to the location of the traffic stop with a K-9 ("dog").

35. Diephuis claimed to have "smelled a strong odor of marijuana" coming from Onnen's vehicle.

36. There was no odor of marijuana coming from Onnen's vehicle.

37. Diephuis' false claim of detecting an odor of marijuana coming from Onnen's vehicle was made due to Onnen's race.

38. At approximately 5:35 p.m., McFarland arrived on the scene and Diephuis relayed his claim to have detected an odor of marijuana coming from Onnen's vehicle.

39. At 5:35:30 Diephuis approached the driver's side and McFarland approached the passenger side of Onnen's vehicle and Diephuis confronted Onnen with his false claim to smelling marijuana coming from Onnen's vehicle.

40. Onnen denied Diephuis' accusation and informed both Troopers that he did not use drugs or even alcohol.

41. At 5:37 p.m, both Troopers escorted Onnen out of his vehicle and brought him back to sit in Diephuis' squad car.

42. Onnen cooperated with a protective pat-down of his person.

43. Onnen again informed Diephuis that his claim of smelling marijuana coming from Onnen's vehicle was false.

44. As he was taking a seat in Diephuis' vehicle, Onnen informed the Troopers, "I appreciate you guys looking for drugs and stuff, but you got the wrong one today."

45. After placing Onnen in Diephuis' vehicle, Diephuis and McFarland had a conversation while standing in front of Diephuis' vehicle.

46. McFarland asked Diephuis if he was certain he smelled marijuana.

47. McFarland did not detect an odor of marijuana coming from Onnen's vehicle.

48. Diephuis responded, "I smelled it, unless it was a car going by me."

49. McFarland then asked if Diephuis smelled marijuana when he re-approached the vehicle.

50. Diephuis responded: "I didn't smell it inside the vehicle…"

51. McFarland then stated, "we will run the dog if you are not 100% sure."

52. Onnen remained detained in the squad vehicle as McFarland retrieved his dog from his squad car and ran it around Onnen's vehicle.

53. As the dog sniffed around Onnen's vehicle, it repeatedly got up on its hind legs and scratched Onnen's vehicle with its paws.

54. McFarland coached and prompted the dog to sniff various parts of Onnen's vehicle, including locations out of the dog's natural reach.

55. McFarland's prompting caused the dog to raise up on its hind legs, extend its paws onto Onnen's vehicle, thereby causing physical damage to the vehicle.

56. The dog showed no interest in any part of Onnen's vehicle.

57. While the dog sniffed around the vehicle, Onnen explained to Diephuis that he took great pride in never having done any drugs in his lifetime.

58. Despite the dog showing no interest in any portion of Onnen's vehicle, McFarland claimed that the dog "alerted" on Onnen's vehicle.

59. The dog did not "alert" to any part of Onnen's vehicle and any law enforcement claims to the contrary are factually false.

60. McFarland's false claim that his dog "alerted" to Onnen's vehicle was made because of Onnen's race.

61. After putting the dog back in his squad car, McFarland informed Onnen that he claimed the dog alerted to the presence of drugs in his vehicle.

62. Onnen responded, "I don't think so" and challenged McFarland's claims.

63. McFarland claimed that while the dog did not sit or display his trained "alert" behavior, because he claimed that the dog searched back and forth on his own, that was sufficient to establish probable cause as to the presence of controlled substances in Onnen's vehicle.

64. Leaving Onnen restrained in Diephuis' vehicle, McFarland and Diephuis proceeded to search Onnen's vehicle over his repeated verbal objections.

65. Deiphuis and McFarland continued to search Onnen's truck which included opening a sealed cardboard box containing empty ammunition shells (as Onnen explained the box contained), located in the bed of Onnen's truck.

66. The search of Onnen's vehicle continued until 6:20 p.m.

67. No drugs, contraband or evidence of illegal activity was discovered during the search of Onnen's vehicle.

68. At 6:28 p.m. Onnen was permitted to leave the traffic stop with a citation for excessive tint.

69. At 6:33 p.m., Troopers Diephuis and McFarland stopped Onnens vehicle for a second time claiming that they believed he was legally prohibited from possessing firearms.

70. Diephuis and McFarlands continued harassment of Onnen was a result of Onnen's race.

71. After Onnen stopped in a timely and appropriate manner again, Diephuis and McFarland both required Onnen to exit the vehicle for a second time and, for a second time, conducted a pat-down of his person before having Onnen sit in Diephuis' squad car.

72. Onnen repeatedly informed both Diephuis and McFarland that he was legal to possess and carry firearms as evidence by his validly issued permit to carry a concealed weapon.

73. Onnen repeatedly offered to show Diephuis and McFarland his permit to carry a concealed weapon.

74. After checking court records, Diephuis and McFarland confirmed for themselves what Onnen's permit to carry a concealed weapon should have told them to begin with, Onnen was legally permitted to possess and carry firearms in the state of Iowa.

75. Onnen was finally permitted to go on about his business and drive the rest of the way home at 6:42 p.m.

## LAW COMMON TO ALL COUNTS

76. Plaintiff's claims against Defendants under the Iowa Tort Claim Act, codified in Iowa Code Chapter 669, abrogate the State's sovereign immunity from tort claims, providing that "[a]ny claim against an employee of the state for money only, on account of damage to or loss of property or

on account of personal injury or death, caused by the negligent and wrongful act or omission of any employee of the state while acting within the scope of the employee's officer or employment." Iowa Code Section 669.2(3)(b).

77. Generally, the State may be sued for damage caused by the negligent or wrongful acts or omissions of State employees while acting within the scope of employment to the same extent that a private person may be sued. Iowa Code § 669.2(3)(a); see also *Magers-Fionof v. State*, 555 N.W.2d 672, 674 (Iowa 1996) (recognizing the ITCA permits an injured party to recover damages for the negligent or wrongful acts of state employees "where the state, if a private person, would be liable to the claimant for such damage." (quoting Iowa Code § 669.2(3)(a)).

78. Employees of the Iowa Department of Public Safety who are acting within the scope of their employment are employees of the State of Iowa for purposes of the Iowa Tort Claims Act.

79. At all times material hereto, the law was clearly established that the State of Iowa and agencies thereof, including the Department of Public Safety and their employees, have a duty to exercise reasonable care win executing their duties of employment.

80. At all times material hereto, the law was clearly established that employees of the State of Iowa owe the same duty of reasonable care as private citizens under similar circumstances.

81. At all times material hereto, the law was clearly established that the negligent or wrongful acts or omissions of State of Iowa employees while acting within the scope of employment subjects the State to damages caused by such acts or omissions to the same extent as a private individual.

82. At all times material hereto, all law pertinent to all claims made herein, including but not limited to, the duty to exercise reasonable care in the particulars set forth herein below, was clearly established.

83. At all times material hereto, the law was clearly established, placing Diephuis and McFarland on notice that their conduct described above violated the clearly established constitutional rights of Onnen as well.

84. At all times material hereto, the law was clearly established, placing Diephuis and McFarland on notice that their conduct described above constituted both civil and criminal Trespass under Iowa law.

**DIVISION I**
**Fourth and Amendment (42 U.S.C. § 1983) - Unreasonable Seizure**
**Defendants Diephuis and McFarland**

85. Onnen incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

86. At all times material hereto, Diephuis and McFarland were acting under color of state law.

87. Diephuis' continued detention of Onnen, past the time necessary to issue a written citation or warning for the window tint violation, absent probable

11

cause or reasonable suspicion of additional criminal activity, was unreasonable and violative of the Fourth Amendment.

88. McFarland's conduct in encouraging and facilitating the unconstitutional continued detention of Onnen, past the time necessary to issue a written citation or warning for the window tint, absent probable cause or reasonable suspicion of criminal activity, was unreasonable and violative of the Fourth Amendment.

89. McFarland's conduct in prompting his dog to physically touch and scratch Onnen's vehicle for purposes of facilitating a criminal investigation, constituted a Trespass against Onnen's personal property in violation of Fourth Amendment to the United States Constitution and article 1, section 8 of the Iowa Constitution.

90. Diephuis and McFarland's conduct in continuing to detain Onnen for purposes of a dog sniff was done absent the required reasonable suspicion of criminal activity.

91. Diephuis and McFarland's conduct in searching Onnen's vehicle absent probable cause or a recognized exception to the warrant requirement, violated the Fourth Amendment to the United States Constitution.

92. Diephuis and McFarland's conduct in stopping Onnen's vehicle for a second time and detaining him further, absent probable cause or reasonable suspicion of criminal activity, violated the Fourth Amendment to the United States Constitution.

93. As a direct and proximate result of Diephuis and McFarland's conduct, Onnen suffered irreparable injury to his constitutional rights and personal liberties guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

94. As a result of Diephuis and McFarland's conduct, Onnen suffered the following additional compensatory damages:

    a.  Deprivation of his constitutional rights;

    b.  Deprivation of his physical freedom and ability to move freely;

    c.  Deprivation of his personal liberty;

    d.  Physical and mental pain and suffering – past and future;

    e.  Humiliation, degradation, public ridicule, and loss of personal reputation;

    f.  Property damage to his vehicle;

    g.  Attorney fees; and

    h.  Other incidental out-of-pocket expenses.

95. Onnen hereby seeks compensatory damages against Diephuis and McFarland's for the violation of his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

96. Onnen further seeks reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

**DIVISION II**
**Fourteenth Amendment (42 U.S.C. § 1981 and 1983) – Equal Protection**
**Defendants Diephuis and McFarland**

97. Onnen incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

98. The Fourteenth Amendment to the United States Constitution and 42 U.S.C. 1981 and 1983 guarantee all citizens equal rights under the law.

99. The Fourteenth Amendment and 42 U.S.C. 1981 and 1983 prohibit selective enforcement of laws based upon an individual's race.

100. The actions and omissions of Diephuis and McFarland previously articulated, were undertaken with the intent to discriminate against Onnen on account of his race and the color of his skin, in violation of his constitution right to Equal Protection, as guaranteed by the Fourteenth Amendment to the United States Constitution.

101. Both Diephuis and McFarland's conduct resulted in a discriminatory effect and were engaged in with a discriminatory purpose.

102. Neither Deiphuis nor McFarland would have treated a similarly situated individual of the Caucasian race the way they treated Onnen.

103. As a result of Diephuis and McFarland's conduct, Onnen suffered the following additional compensatory damages:

    a. Deprivation of his constitutional rights;

    b. Deprivation of his physical freedom and ability to move freely;

    c. Deprivation of his personal liberty;

    d.  Physical and mental pain and suffering – past and future;

    e.  Humiliation, degradation, public ridicule, and loss of personal reputation;

    f.  Property damage to his vehicle;

    g.  Attorney fees; and

    h.  Other incidental out-of-pocket expenses.

104. Onnen hereby seeks compensatory damages against Diephuis and McFarland's for the violation of his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

105. Onnen further seeks reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988.

### DIVISION III
### <u>Trespass</u>
### Defendants Diephuis and McFarland

106. Onnen incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

107. McFarland caused and permitted his dog to physically intrude upon and damage Onnen's vehicle without lawful authority.

108. Diephuis and McFarland entered upon and into Onnen's vehicle, in violation of Onnen's clear notification and request to abstain from such conduct, without lawful authority.

109. Diephuis and McFarland intentionally entered upon and into the personal property of Onnen's without Onnen's consent, express or implied.

110. Deiphuis and McFarland's conduct constituted a civil Trespass.

111. Deiphuis and McFarland's conduct also constituted a criminal Trespass in violation of Iowa Code section 716.7.

112. As a result of Diephuis and McFarland's conduct, Onnen suffered the following additional compensatory damages:

    a.  Deprivation of his constitutional rights;

    b.  Deprivation of his physical freedom and ability to move freely;

    c.  Deprivation of his personal liberty;

    d.  Physical and mental pain and suffering – past and future;

    e.  Humiliation, degradation, public ridicule, and loss of personal reputation;

    f.  Property damage to his vehicle;

    g.  Attorney fees; and

    h.  Other incidental out-of-pocket expenses.

113. Onnen hereby seeks compensatory damages against Diephuis and McFarland's for the violation of his right to be free from unreasonable searches and seizures as guaranteed by the Fourth Amendment to the United States Constitution.

**DIVISION IV**
<u>**Common Law Negligence and State Tort Claims Act**</u>
**Defendants Diephuis, McFarland and State of Iowa**

114. Onnen incorporates by reference the allegations in the paragraphs above as though fully set forth herein.

115. Iowa Code section 669.2, of the State Tort Claims Act, imposes liability on the State for their torts and the torts of its officers and employees, acting within the scope of their employment or duties.

116. As certified peace officers in the State of Iowa, Diephuis and McFarland had a duty to act in conformity with the United States Constitution, the constitution of the State of Iowa, and other applicable federal and state laws.

117. Diephuis and McFarland failed to exercise due care and were negligent in one or more of the following particulars:

    a. Making false claims of odors of narcotics coming from Onnen's vehicle;

    b. Seizure of Onnen's person past the time necessary to issue him a citation or written warning;

    c. Permitting McFarland's dog to scratch Onnen's vehicle;

    d. Searching Onnen's vehicle in direct defiance of his specifically voiced objections;

    e. Entering into and upon Onnen's vehicle in direct defiance to his specific objection

    f. Performing a second stop of Onnen's vehicle absent legal justification; and

     g.  Seizing and continuing to detain Onnen absent legal justification.

118. The State of Iowa had a duty to ensure that its certified law enforcement officers operated in conformity with the United States Constitution, the constitution of the State of Iowa, and other applicable federal and state law.

119. The State of Iowa, as the employer of Diephuis and McFarland, was negligent in one or more of the following particulars:

     a.  Failing to adequately train Dieupuis and McFarland;

     b.  Failing to adequately supervise Dieupuis and McFarland;

     c.  Failure to use and exercise that degree of skill, care and learning ordinarily possessed and exercised by law enforcement agencies in similar circumstances; and

     d.  Failing to act to comply with industry standards related to the training, supervision, and oversight of law enforcement officers under similar circumstances.

120. At all times material hereto, Dieupuis and McFarland's were performing their work and duties thereof, as an employ of the State of Iowa, Iowa Department of Public Safety.

121. Pursuant to the doctrine of *respondeat superior,* Defendant, State of Iowa, is liable for all damages caused by the wrongful and negligent acts of their employees, Dieupuis and McFarland.

122. As a result of the aforementioned conduct of Dieupuis, McFarland, and the State of Iowa, Onnen suffered damages as set forth previously.

**WHEREFORE** Plaintiff, Anthony Onnen, respectfully requests judgment against Defendants for actual and compensatory damages in a fair and reasonable amount; for interest at the legal rate; for attorney fees and for costs of this action and for such other and further relief as is allowed by law, consistent with the allegations herein contained, and the Court otherwise deems just and equitable in the premises.

<u>**JURY DEMAND**</u>

Plaintiff, Anthony Onnen, hereby demands a jury trial as to all claims stated in this Complaint.

Respectfully Submitted,

GOURLEY, REHKEMPER,
& LINDHOLM, P.L.C.

By: /s/ *Robert Rehkemper*
_____
Robert G. Rehkemper,  AT0006553
440 Fairway, Suite 210
West Des Moines, IA 50266
Telephone No. (515) 226-0500
Email:  rgrehkemper@grllaw.com
ATTORNEY FOR PLAINTIFF

ORIGINAL FILED.