IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| ANTHONY JAMES EDWARD ONNEN, | ) | Case No. 4:24-cv-00052-SMR-HCA |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON DEFENDANTS' PARTIAL |
| v. | ) | MOTION TO DISMISS |
| | ) | |
| STATE OF IOWA, RICHARD DIEPHUIS, | ) | |
| and TRENT L. MCFARLAND, | ) | |
| | ) | |
| Defendants. | ) | |

This case arises from a traffic stop conducted by Iowa State Patrol officers. Plaintiff Anthony Onnen alleges that he was unlawfully detained and searched by Iowa State Troopers. He filed this lawsuit contending that the two officers were racially motivated when they subjected him to a prolonged roadside detention, vehicle search, and a second traffic stop. Onnen brings claims for unreasonable search and seizure, equal protection violations, as well as common law claims for trespass and negligence. Defendants move to dismiss the equal protection claim and the two common law claims.

## I.      BACKGROUND

### A. Factual Background[1]

On October 17, 2022, Iowa State Trooper Richard Diephuis initiated a traffic stop on Onnen's vehicle for excessive window tint in Mahaska County, Iowa. Onnen was polite and cooperative with Trooper Diephuis, providing his driver's license, vehicle registration, and proof

---

[1] These facts are drawn from Onnen's First Amended Complaint ("FAC"). For purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the factual averments are accepted as true. *McShane Constr. Co. v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017) (citation omitted).

of insurance promptly upon request.  During his initial contact with Onnen, Trooper Diephuis observed a firearm magazine.  He asked Onnen if there was a firearm that goes with the magazine.  Onnen confirmed there was a firearm that was lawfully stored in the trunk of his vehicle.  He also advised Trooper Diephuis that he had a valid Iowa permit to carry a firearm.

After confirming that Onnen had no outstanding warrants, Trooper Diephuis claimed to smell marijuana coming from the vehicle.  Onnen denied there was any marijuana odor.  Iowa State Trooper Trent McFarland was then summoned to the scene by Trooper Diephuis to assist with a K-9 unit.  Onnen told both officers that he did not use narcotics and did not even consume alcohol.

The FAC alleges that the officers detained Onnen in a patrol car while conducting a dog sniff of his vehicle.  Onnen claims that Trooper McFarland prompted the dog to scratch his vehicle, causing damage.  Although the dog allegedly showed no interest in the vehicle, Trooper McFarland determined that it had alerted.  The two officers then searched the vehicle over Onnen's vocal objections.  The search did not turn up any drugs or other contraband.

Onnen was then cited for excess window tint and released from the scene.  However, minutes later, the two officers stopped his vehicle again.  The stated reason for this traffic stop was suspicion that Onnen was legally prohibited from possessing a firearm.  Onnen alleges he informed the officers he had a valid permit to carry a concealed weapon.  After checking records, the officers confirmed Onnen was legally permitted to possess firearms and he was permitted to leave.

### B. Procedural Background

Onnen filed this case on February 9, 2024, asserting multiple constitutional and common law claims against the State of Iowa, Trooper Diephuis, and Trooper McFarland.  [ECF No. 1].  After Defendants moved to dismiss the original complaint, he filed the FAC, which is the operative

pleading.  [ECF Nos. 4, 6].  Defendants now move to dismiss three of the four claims asserted in the FAC.  [ECF No. 8].

Onnen brings four claims against Defendants.  Count I is a claim against Trooper Diephuis and Trooper McFarland for unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.  [ECF No. 6 ¶¶ 95–106].  In Count II, Onnen asserts that the two officers subjected him to racial discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment and Section 1981.  *Id*. ¶¶ 107–15.  He also alleges racial discrimination under Section 1981.  Count III of the FAC is a state common law claim for trespass against Trooper Diephuis and Trooper McFarland.  Onnen contends that the two officers committed a trespass by allowing the K-9 to physically intrude upon his vehicle and the subsequent search of it.  *Id*. ¶¶ 116–24.  Finally, Count IV brings a claim for negligence against both officers and the State of Iowa arising out of the two traffic stops and the roadside search of his vehicle.  *Id*. ¶¶ 125–33.

## II.    DISCUSSION

### A.  *Motion to Dismiss Standard*

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court must accept as true all facts pled and grant all reasonable inferences drawn from the pleadings in favor of the nonmovant.  *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 721 (8th Cir. 2014) (citation omitted).  A complaint is not adequately pled to state a claim for relief if it only contains "'naked assertions devoid of further factual enhancement." *Christopher v. Bushner*, 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

Under the Rule 8 standard, a plaintiff is required only to set forth a "short and plain statement of the claim" with sufficient facts to "show that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To survive a motion to dismiss, the alleged facts "must be enough to raise a right to relief above the speculative level" by presenting claims that are facially plausible. *Iqbal*, 556 U.S. at 678 (citation omitted).  The plausibility standard is not a probability requirement, but requires that the pleading contain sufficient facts "to raise a reasonable expectation that discovery with reveal evidence" to support a violation. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).  A plaintiff cannot base an entitlement to relief on merely "labels and conclusions." *Twombly*, 550 U.S. at 555.  Thus, where a complaint pleads facts that are "consistent with" liability, but does not cross the line between possibility and plausibility, it fails to state a claim under Rule 12(b)(6). *Ahern Rentals, Inc. v. EquipmentShare.com, Inc.*, 59 F.4th 948, 953 (8th Cir. 2023) (quoting *Twombly*, 550 U.S. at 557).

*B.  Analysis*

Defendants move to dismiss three claims from the FAC.  First, they argue that Onnen fails to state a plausible claim for an equal protection violation arising from the traffic stop.  Defendants assert that there are no specific facts pled in the FAC to support a claim for racial discrimination by Trooper Diephuis or Trooper McFarland.  They urge the Court to disregard the conclusory and speculative assertions offered by Onnen.

Defendants also seek dismissal of Count III of the FAC, which alleges a claim for trespass against both officers.  They contend that the Iowa Supreme Court has just recently rejected trespass claims against officers while performing their official duties.  Defendants claim that qualified immunity on the trespass claim would be appropriate even if Onnen had pled a valid claim.

Finally, Defendants argue that the negligence claim pled in Count IV should be dismissed for multiple different reasons. They first maintain that Onnen did not exhaust his administrative remedies as required by Iowa statute. Next, Defendants claim that the negligence claim is a functional equivalent to the intentional tort for which the State of Iowa has not waived its sovereign immunity. They also contend that negligent law enforcement is not a recognized tort in Iowa. Lastly, Defendants assert that the two officers are entitled to statutory qualified immunity for the negligence claim which they urge was not clearly established at the time of the conduct.

### 1. Equal Protection Claim

In Count II of the FAC, Onnen alleges that Trooper Diephuis and Trooper McFarland violated his rights protected by the Fourteenth Amendment and Section 1981.[2] He argues that the traffic stop and search were motivated by racial discrimination and deprived him of his constitutional guarantee to equal protection of the laws. Defendants move to dismiss Count II on the basis that the pleadings do not allege sufficient non-conclusory facts to state a claim for an equal protection violation.

The Equal Protection Clause of the Fourteenth Amendment provides "that no state shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Stevenson v. Blytheville Sch. Dist. #5*, 800 F.3d 955, 970 (8th Cir. 2015) (quoting *City of Cleburne v. Cleburne Living Ctr.*,

---

[2] Count II pleads a claim under the Fourteenth Amendment and Section 1981. The provision of Section 1981 is the rarely-litigated "equal benefits clause." *See Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996) ("Litigation involving § 1981 most commonly involves the right to make and enforce contracts."). Both the Equal Protection Clause and Section 1981 apply "to claims involving the intentional targeting of minorities for traffic stops, the use of deadly force, and racially motivated arrests." *Williams v. City of Burlington*, Case No. 3:19-cv-00043-SMR-HCA, 2020 WL 11027940, *5 (S.D. Iowa Feb. 13, 2020) (citation omitted). The legal analysis for Section 1981 and the Equal Protection Clause appear to be coextensive and neither party makes distinct arguments between the provisions.

473 U.S. 432, 439 (1985)).  The first step when considering an equal-protection challenge is determining whether the plaintiff has demonstrated that he was treated differently than similarly situated people.  *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 959 (8th Cir. 2019).  If disparate treatment is "based on a suspect classification, such as race," strict scrutiny must be applied.  *Exec. Air Taxi Corp. v. City of Bismarck*, 518 F.3d 562, 566 (8th Cir. 2008).

The United States Supreme Court has recognized that the Constitution prohibits selective enforcement of the law based on race.  *Whren v. United States*, 517 U.S. 806, 813 (1996) (agreeing "that the Constitution prohibits selective enforcement of the law based on considerations such as race").  The Equal Protection Clause of the Fourteenth Amendment is the relevant constitutional provision for such a claim.  *Gilani v. Matthews*, 843 F.3d 342, 347 (8th Cir. 2016) (observing that "[t]he Constitution prohibits selective enforcement of the law based on considerations such as [race] . . . and the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause") (cleaned up).

An equal protection claim predicated on selective enforcement requires a showing of discriminatory intent and discriminatory effect.  *Johnson v. Crooks*, 326 F.3d 995, 999 (8th Cir. 2003); *see also United States v. Frazier*, 408 F.3d 1102, 1108 (8th Cir. 2005) ("[E]ncounters with officers may violate the Equal Protection Clause when initiated solely based on racial considerations.") (citation omitted).  This typically requires a plaintiff to "prove that similarly situated individuals were not stopped or arrested in order to show the requisite discriminatory effect and purpose."  *Clark v. Clark*, 926 F.3d 972, 980 (8th Cir. 2019); *cf. Crooks*, 326 F.3d at 1000 (holding that for a claim of selective enforcement of traffic laws, a plaintiff typically shows the requisite discriminatory effect and purpose by proving that others similarly situated were not stopped or arrested).  Any comparators must be similarly situated "'in all relevant

respects.'" *Gilani*, 843 F.3d at 348 (quoting *Flowers v. City of Minneapolis*, 558 F.3d 794, 798 (8th Cir. 2009)).

Onnen must plead non-conclusory facts to state a claim for relief. *See Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (taking the factual allegations in a pleading as true "does not apply . . . to legal conclusions or 'formulaic recitation of the elements of a cause of action'"). In order to state a claim sufficient to survive a motion to dismiss pursuant to Rule 12(b)(6), "'naked assertions devoid of further factual enhancement,' do not suffice, nor do 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678). Therefore, it is not enough for the FAC to invoke Onnen's race without alleging additional facts to demonstrate that his race "was the reason for defendant's actions." *See Williams*, 2020 WL 11027940, at *5 (quoting *Kugle v. State Farm, Fire & Cas. Co.*, 48 F. Supp. 3d 67, 77 (D.D.C.2014)).

Onnen argues that direct evidence of Defendants' intent is not a legal requirement, in part because "such direct evidence is rare" necessitating proof by circumstantial evidence. *See Kim v. Nash Finch Co.*, 123 F.3d 1046, 1059 (8th Cir. 1997). However, the pleading standard under *Iqbal* and *Twombly* requires a complaint to allege plausible facts sufficient to push a plaintiff's claims, "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 679 (citation omitted). This means that if a plaintiff "pleads facts that are merely consistent with a defendant's liability, the complaint stops short of the line between possibility and plausibility of entitlement to relief." *Ahern Rentals, Inc.*, 59 F.4th at 953 (cleaned up) (citation omitted). Put differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Edwards v. City of Florissant, Mo.*, 58 F.4th 372, 377 (8th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 679).

There are no facts pled in the FAC that establish any discriminatory intent beyond conclusory and speculative allegations. For instance, Onnen contends that the officers falsely claimed to smell marijuana solely based on his race. [ECF No. 6 ¶¶ 39–41]. He asserts that the officers have not previously made such false claims about motorists of different races than him. *Id.* ¶ 42. However, Onnen does not plead facts which could substantiate this assertion or establish that individuals similarly situated to him were treated differently. Some of his allegations may be relevant to other legal violations, but not to racial discrimination. Other factual allegations specifically identified which are not relevant to a racial discrimination claim, include that: (1) he was polite and cooperative with officers; (2) he possessed a valid driver's license; and (3) his only legal violation was excessive tint on his windows. *See id.* ¶¶ 26, 29–36. Taking these allegations in the light most favorable to Onnen, they are "merely consistent with" liability but "stop[] short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Count II must be dismissed.

## 2. Trespass

Count III of the FAC brings a claim for trespass against Trooper Diephuis and Trooper McFarland. Onnen alleges that a trespass was committed by the individual Defendants when: (1) Trooper McFarland allowed his dog to intrude upon his vehicle causing damage; and (2) Trooper Diephuis and Trooper McFarland entered into his vehicle in violation of his request that they abstain. [ECF No. 6 ¶¶ 117–120]. He claims that he suffered damages as a result of the trespass by the two officers.

A trespass occurs when a person "is not rightfully upon the property of another, but enters it without consent, either express or implied, of the owner or occupier." *Long v. Lauffer*, No. 09-1916, 2011 WL 222530, at *9 (Iowa Ct. App. Jan. 20, 2011) (citation omitted); *see also* Iowa Code § 716.7(2) (defining criminal trespass). Iowa law recognizes that "[e]very unauthorized entry is a trespass, regardless of the degree of force used, even if no damage is done, or the injury is slight." *Iowa State Highway Comm'n v. Hipp*, 147 N.W.2d 195, 199 (Iowa 1966) (citation omitted). A plaintiff who brings a trespass action bears the burden to prove that the defendant did not have consent or other legal authorization. *Id*.

Defendants seek dismissal of Count III, describing it as a "grab bag of claimed relief all under the heading of a state law claim" for trespass. [ECF No. 8 at 8]. They argue that any claim for trespass has been foreclosed by the Iowa Supreme Court. *See White v. Harkrider*, 990 N.W.2d 647, 645 (Iowa 2023). In *Harkrider*, two plaintiffs brought trespass claims against officers who were investigating an automobile accident. The court found that "[e]ven when the amended petition is viewed in the light most favorable to White, her trespass claim fails as a matter of law because the law enforcement officials had a legal right to enter White's property" as part of their official investigation. *Harkrider*, 990 N.W.2d at 654 (citing *State v. Van Rees*, 246 N.W.2d 339, 343 (Iowa 1976)). The *Harkrider* Court concluded that the conclusion in *Van Rees* was consistent with "the general rule" across jurisdictions that a government official has a "privilege to enter property to effect an arrest or enforce the criminal law under certain circumstances." *Id*. at 655 (quoting *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 161 (2021)).

Onnen responds that Defendants omit an important aspect of the decision in *Harkrider*. He insists that the exception for law enforcement applies only if the officer is acting lawfully within their official duties, *i.e.*, not "without a warrant or other authority." [ECF No. 10 at 7] (quoting

*Van Rees*, 246 N.W.2d at 343). Onnen contends that the FAC alleges that neither officer was justified in their otherwise trespassory conduct, therefore, dismissal of the claim is improper.

Onnen's attempt to shoehorn the totality of his allegations into a trespass claim is unpersuasive. Although the FAC alleges that both officers acted "without legal justification," that is not an allegation that must be accepted as true on a Rule 12(b)(6) motion. Ordinarily, a court must "accept 'as true the complaint's factual allegations and grant all reasonable inferences to the non-moving party.'" *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Braden*, 588 F.3d at 591). However, "[t]his rule 'is inapplicable to legal conclusions,' which the Court may disregard." *Hilson v. Waukee Cmty. Sch. Dist.*, 669 F. Supp. 3d 760, 766 (S.D. Iowa 2023) (quoting *Iqbal*, 556 U.S. at 678). Courts will also not credit "a formulaic recitation of the elements of a cause of action." *Rydholm v. Equifax Info. Servs. LLC*, 44 F.4th 1105, 1108 (8th Cir. 2022) (citation omitted).

Furthermore, Onnen's position is inconsistent with *Harkrider*, where the Iowa Supreme Court rejected a trespass claim even after viewing the pleadings in the light most favorable to the plaintiff. *Harkrider*, 990 N.W.2d at 655. The plaintiff in *Harkrider* had also alleged that the officers did not have legal justification to enter her property. *See id.* at 651 (asserting a claim for unreasonable seizure under the Iowa Constitution). The Iowa Supreme Court did not credit this legal conclusion, holding that the officers did not commit a trespass when they entered upon the plaintiff's property. The same outcome is dictated for Onnen's claim. Count III will be dismissed.

### 3. Negligence

In Count IV, Onnen brings a claim for common law negligence against all Defendants. Against Trooper Diephuis and Trooper McFarland, he alleges they failed to exercise due care by: (1) permitting the K9 to scratch his vehicle; (2) searching his vehicle in defiance of his objections;

(3) entering into his vehicle against his express wishes; and (4) failing to use and exercise the degree of skill, care, and learning ordinarily possessed and exercised by law enforcement officers in similar circumstances."  [ECF No. 6 ¶ 128].

As to the State of Iowa, Onnen claims that it failed to: (1) adequately train both officers; (2) adequately supervise both officers; (3) use and exercise the degree of skill, care, and learning possessed and exercised by law enforcement agencies in similar circumstances; and (4) comply with industry standards related to training, supervision, and oversight of law enforcement officers under similar circumstances.  *Id*. ¶ 130.  The FAC alleges that the State of Iowa is liable for the negligence of Trooper Diephuis and Trooper McFarland under the doctrine of *respondeat superior*. *Id*. ¶ 132.

Defendants seeks dismissal of Count IV on multiple grounds.  First, they claim that Onnen did not exhaust his administrative remedies prior to filing his lawsuit because he did not identify negligence as a legal theory.  Defendants next contend that the State of Iowa has sovereign immunity because the negligence claim is a functional equivalent of claims of intentional torts excluded from the statutory waiver of sovereign immunity.  They also argue that negligent law enforcement is not an actionable tort in Iowa.  Defendants finally urge that Count IV fails under the public duty doctrine or qualified immunity.

The Court concludes that dismissal is appropriate because Iowa does not recognize a tort for negligent law enforcement response and investigation.  The Iowa Supreme Court has long-held that "law enforcement officers have no liability for mere negligence in investigation of crime." *Smith v. State*, 324 N.W.2d 299, 302 (Iowa 1982).  This is consistent with the principle that law enforcement personnel do not owe a particularized duty to protect individuals . . . they owe a general duty to the public."  *Morris v. Leaf*, 534 N.W.2d 388, 390 (Iowa 1995) (collecting cases).

There are two exceptions to this general rule: (1) when law enforcement creates a situation that places a citizen's life in jeopardy; or (2) when police take a person into custody and exercise control over them. *Mastenbergen v. City of Sheldon*, 515 N.W.2d 3, 5 (Iowa 1994) (citing *Hildenbrand v. Cox*, 369 N.W.2d 411, 415 (Iowa 1985)).

The Iowa Supreme Court has found that there is no negligence tort for officers "when the person allegedly harmed by a negligent investigation has been charged and arrested, but also when the allegedly negligent investigation results in no arrest." *Hildenbrand*, 369 N.W.2d at 415 (declining to "depart from the rule of *Smith* and its rationale" and applying "a sound corollary" of the *Smith* rule to investigations that do not end in arrest).

Onnen's response to the Motion to Dismiss is to highlight "the recent trend" of certain States to permit a cause of action for negligent investigation by law enforcement. [ECF No. 10 at 19]. Not only is this irrelevant to overcome binding Iowa precedent to the contrary, but the resistance brief only provides a single court case to support this trend. *See Palm-Egle v. Briggs*, 545 P.3d 828, 840 (Wyo. 2024) (holding that law enforcement officers acting within the scope of their official duties owe a duty of ordinary prudence).

Onnen maintains that he does not need to argue for a change in the law (which this federal court cannot do) because this case is distinguishable from *Smith*, where the Iowa Supreme Court first rejected a negligence claim based on insufficient law enforcement investigation. He maintains that his allegation is not that Defendants "did not do a good enough investigation which resulted in him being arrested and charged with a criminal offense. Plaintiff was NOT arrested and was NOT charged with a crime because no crime had been committed." [ECF No. 10 at 19]. Rather, Onnen contends that he "simply alleges that the Defendant[s] were negligent in handling of the dog and in entering and remaining upon his personal property over his objection." *Id*. In essence,

he recasts his negligence claim, much like his trespass claim, as predicated on a search without probable cause.

Iowa case law clearly rejects any common law negligence claim based on a criminal investigation.  Onnen's attempt to avoid this conclusion fails.  The FAC expressly states that Trooper McFarland's "conduct in prompting his dog to physically touch and scratch Onnen's vehicle for purposes of facilitating a criminal investigation" was a trespass.  [ECF No. 6 ¶ 99].  All the conduct identified in the negligence claim was for the purpose of a criminal investigation. However, the Iowa Supreme Court foreclosed such negligence claims 40 years ago.  Count IV will be dismissed.

### III.    CONCLUSION

For the reasons discussed above, Defendants' partial Motion to Dismiss is GRANTED. [ECF No. 8].  The pending motion to dismiss is DENIED AS MOOT.  [ECF No. 4].

IT IS SO ORDERED.

Dated this 16th day of September, 2024.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT